UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GREGORY WATTS,

Petitioner,

v.

DAVID BERGH,

Respondent.
_______________________/

CASE NO. 2:10-CV-12899
JUDGE VICTORIA A. ROBERTS
MAGISTRATE JUDGE PAUL J. KOMIVES

**REPORT AND RECOMMENDATION**

I. RECOMMENDATION: The Court should deny petitioner's application for the writ of habeas corpus and should deny petitioner a certificate of appealability.

II. REPORT:

A. *Procedural History*

1. Petitioner Gregory Watts is a state prisoner, currently confined at Thumb Correctional Facility in Lapeer, Michigan.

2. On August 6, 2007, petitioner was convicted of first-degree premeditated murder, MICH. COMP. LAWS § 750.316(1)(a); felon in possession of a firearm, MICH. COMP. LAWS § 750.224f; and felony firearm, MICH. COMP. LAWS § 750.227b, following a jury trial in the Wayne County Circuit Court. On August 24, 2007, he was sentenced to a mandatory term of life imprisonment without possibility of parole for the murder conviction, a concurrent term of 3-5 years' imprisonment for the felon in possession of a firearm conviction, and a mandatory consecutive term of 5 years' imprisonment for the felony firearm conviction.

3.Petitioner appealed as of right to the Michigan Court of Appeals raising, through counsel, the following claim:

I.THE TRIAL COURT ERRED, THEREBY DENYING DEFENDANT A FAIR TRIAL, WHEN IT REFUSED TO INSTRUCT THE JURY ON SELF DEFENSE AND WHEN IT FAILED TO INSTRUCT THE JURY ON VOLUNTARY MANSLAUGHTER.

Petitioner also filed a *pro se* supplemental brief, which raised the following claims:

I.THE TRIAL COURT ERRED WHEN IT DENIED DEFENDANT'S MOTION TO QUASH THE INFORMATION BECAUSE THERE WAS NO EVIDENCE PRESENTED AT THE PRELIMINARY EXAMINATION THAT WOULD HAVE SUPPORTED PREMEDITATION.

II.DEFENDANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL WHEN HIS TRIAL COUNSEL FAILED TO OBJECT TO THE IMPROPER LINEUP PROCEDURE.

The court of appeals found no merit to petitioner's claims, and affirmed his conviction and sentence. *See People v. Watts*, No. 280319, 2009 WL 153429 (Mich. Ct. App. Jan. 22, 2009) (per curiam).

4.Petitioner, proceeding *pro se*, sought leave to appeal in the Michigan Supreme Court, raising the following claims:

I.THE TRIAL COURT ERRED, THEREBY DENYING DEFENDANT A FAIR TRIAL, WHEN IT REFUSED TO INSTRUCT THE JURY ON SELF DEFENSE AND WHEN IT FAILED TO INSTRUCT THE JURY ON VOLUNTARY MANSLAUGHTER.

II.THE TRIAL COURT ERRED WHEN IT DENIED DEFENDANT'S MOTION TO QUASH THE INFORMATION BECAUSE THERE WAS NO EVIDENCE PRESENTED AT THE PRELIMINARY EXAMINATION THAT WOULD HAVE SUPPORTED PREMEDITATION.

III.DEFENDANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL WHEN HIS TRIAL COUNSEL FAILED TO OBJECT TO THE IMPROPER LINEUP PROCEDURE.

IV. THE MICHIGAN SUPREME COURT SHOULD CONSIDER THE DOCTRINE OF IMPERFECT SELF DEFENSE BECAUSE IT IS APPLICABLE HERE.

The Supreme Court denied petitioner's application for leave to appeal in a standard order. *See People v. Watts*, 484 Mich. 868, 769 N.W.2d 678 (2009).

5. Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus on July 3, 2010[1]. As grounds for the writ of habeas corpus, he raises three claims for relief:

(1) THE TRIAL COURT ERRED, THEREBY DENYING DEFENDANT A FAIR TRIAL, WHEN IT REFUSED TO INSTRUCT THE JURY ON SELF DEFENSE AND WHEN IT FAILED TO INSTRUCT THE JURY ON VOLUNTARY MANSLAUGHTER.

(2) THE TRIAL COURT ERRED WHEN IT DENIED DEFENDANT'S MOTION TO QUASH THE INFORMATION BECAUSE THERE WAS NO EVIDENCE PRESENTED AT THE PRELIMINARY EXAMINATION THAT WOULD HAVE SUPPORTED PREMEDITATION.

(3) DEFENDANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL WHEN HIS TRIAL COUNSEL FAILED TO OBJECT TO THE IMPROPER LINEUP PROCEDURE.

6. Respondent filed an answer on March 15, 2011, contending that a portion of petitioner's first claim is barred by petitioner's procedural default in the state courts, and that all of the claims are without merit.

B. *Factual Background Underlying Petitioner's Conviction*

Petitioner's convictions arise from the January 8, 2007, murder of Chavez Poellnitz. The evidence adduced at trial was accurately summarized in petitioner's brief in the Michigan Court of Appeals filed by appellate counsel:

> On January 8, 2007, [Darryl] Satterwhite and the deceased were on the side of his grandmother's house talking about cars, when defendant, whom he did

[1] Petitioner filed a second application on April 14, 2011. This application is identical to his initial application.

not know, approached them on foot with another friend. Some words were spoken and then defendant opened fire with a handgun from approximately 3-4 feet away. Mr. Poellnitz stood there for a second, then went to the other side of the street, pulling out a weapon, shooting back at defendant. Defendant shot two more times then took off running.

The other person was holding him as a shield. After the shots rang out, the person went behind defendant. He was later interviewed by the police and later identified defendant in a corporeal lineup. He admitted he gave two different statements to the police; the first did not identify deceased as a friend. He was shown photographs at his house but did not identify anyone. After he fired one shot, deceased continued to run then collapsed, dropping the gun. He saw two other persons pick it up while he was attending to deceased. He admitted he did not know Mr. Poellnitz's real name, only knew him by nicknames.

[Lester] Adams knew defendant. On the day in question he was driving with defendant down the street when defendant told him to turn around, because defendant saw two guys standing outside. Defendant told him he was about to "slap the shit out of this dude." He parked and defendant got out. They walked down the street; Mr. Adams following approximately 15 feet behind. Mr. Adams talked with the other person while defendant was arguing with a person in the street. He had known that person as living in the neighborhood. Cuss words were exchanged and both started shooting. When the shooting started both he and the other person dropped to the ground; the other person then ran into the house and he ran to his car.

He had not seen defendant with a gun. A few days after the incident, he was interviewed by the police. Afterwards, defendant tried contacting him by telephone. Although he did not tell the police, defendant had run back to the car and Mr. Adams dropped him off and then went home.

He testified at the preliminary examination, was not offered any details, did not know who pulled the weapon first or who shot first. He only thought there was going to be some fighting, not shooting. He was not arrested.

Dr. Bechinski, forensic pathologist, performed the autopsy on deceased, determining the cause of death was multiple gunshot wounds. He was unable to determine whether deceased was shot two or three times.

Off. Eaton responded to the location. He later went to the hospital to obtain the chart condition (DOA) and obtained the name of the doctor who treated deceased. At the time he did not know the name of the individual.

Sgt. Duda was the supervisor at the scene maintaining it. He observed three shell casings on the ground. He later turned over the scene to Sgt. Diaz and canvassed the neighborhood.

Mr. Nairhos was the evidence technician. By stipulation, his report was read to the jury. It included recovering 9mm shell casings, a description of the scene, photographs taken, and a sketch.

Sgt. Diaz took over the scene, finding another shell casing. Sgt. Dugan had interviewed Mr. Satterwhite. He was interviewed again which led to the name

> of Mr. Adams (Duke). He was also shown photographs of Mr. Adams, who was later arrested. An interview with him led to the arrest of defendant.
>
> Prosecution rested. Jury instructions were reviewed.
>
> Petitioner agreed he would not be testifying and agreed he was abandoning the alibi defense that had been previously raised. Jury instructions were again reviewed, with the court declining to instruct on self-defense. Defense rested.

Def.-Appellant's Br. on Appeal, in *People v. Watts*, No. 280319 (Mich. Ct. App.), at 3-5 (citations to trial transcript omitted).

C. *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996). See *Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). Amongst other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also, Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless

arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also, Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also, Williams,* 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of

[Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also, Mitchell*, 540 U.S. at 16. Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 f.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

D.*Incorrect Jury Instructions (Ground 1)*

In Ground 1, petitioner contends that the court erred when it refused to instruct the jury on self-defense, and when it failed to instruct the jury on voluntary manslaughter. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

1.*Clearly Established Law*

It is well established that habeas corpus is not available to remedy a state court's error in the application of state law. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Jackson v. Ylst*, 921 F.2d 882, 885 (9th Cir. 1990) (a federal court on habeas review "ha[s] no authority to review a state's application of its own laws). Thus, in order for habeas corpus relief to be warranted on the basis of incorrect jury instructions, a petitioner must show more than that the instructions are undesirable, erroneous or universally condemned; rather, taken as a whole, they must be so infirm that they rendered the entire trial fundamentally unfair. *See Estelle*, 502 U.S. at 72-73 (quoting *Dowling v. United States*, 493 U.S. 342, 352 (1990)).

Despite this deferential standard of review, a jury instruction will not withstand scrutiny if it

submits alternative theories for the jury to convict, one of which is permissible and the other unconstitutional, and the reviewing court cannot determine on which theory the jury relied. *See Zant v. Stephens*, 462 U.S. 862, 881-83 (1983); *Bachellar v. Maryland*, 397 U.S. 564, 571 (1970); *United States v. Wilkinson*, 26 F.3d 623, 625 (6th Cir. 1994). *But see Griffin v. United States*, 502 U.S. 46, 56 (1991) (general jury verdict is valid if sufficient evidence supports one of the grounds for conviction so long as the other submitted grounds are neither legal nor unconstitutional, but merely unsupported by the evidence); *United States v. Mari*, 47 F.3d 782, 785-86 (6th Cir. 1995). An instruction is also invalid if it can be viewed by the jury as shifting the burden of proving an element of the case onto the defendant, as when it instructs the jury to presume that a person intends to commit the natural, ordinary and usual consequences of his voluntary actions, *see Sandstrom v. Montana*, 442 U.S. 510, 524 (1979), or to presume malice from either an unlawful act or from the use of a deadly weapon, *see Yates v. Evatt*, 500 U.S. 391, 401-02 (1991); *Houston v. Dutton*, 50 F.3d 381, 385-86 (6th Cir. 1995). If an instruction is ambiguous and not necessarily erroneous, it can run afoul of the Constitution only if there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution. *See Estelle*, 502 U.S. at 72 & 73 n.4; *Boyde v. California*, 494 U.S. 370, 380 (1990). Nonetheless, instructional errors of state law will rarely form the basis for federal habeas corpus relief. *See Estelle*, 502 U.S. at 71-72.

2.*Analysis*

*a.Failure to Instruct on Voluntary Manslaughter*

Petitioner first contends that the trial court improperly failed to give an instruction on voluntary manslaughter. This Court should reject this claim, for two reasons.[2]

First, this claim does not present a cognizable basis for habeas review. Although the Eighth Amendment and the Due Process Clause require that a trial court instruct the jury on lesser included offenses in the context of a capital case, *see Beck v. Alabama*, 447 U.S. 625, 637-38 (1980) (trial court required to instruct *sua sponte* on a lesser included offenses where the failure to do so would result in the jury being given "all or nothing" choice of convicting on the capital charge or acquitting the defendant), "the Constitution does not require a lesser-included offense instruction in non-capital cases." *Campbell v. Coyle*, 260 F.3d 531, 541 (6th Cir. 2001). As the Sixth Circuit has noted, even where a lesser offense instruction is requested, the failure of a court to instruct on a lesser included or cognate offense in a non-capital case is generally "not an error of such magnitude to be cognizable in federal habeas corpus review." *Bagby v. Sowders*, 894 F.2d 792, 797 (6th Cir. 1990) (en banc); *see also*, *Scott v. Elo*, 302 F.3d 598, 606 (6th Cir. 2002). At a minimum, there is no clearly established Supreme Court law, which requires giving of a requested lesser offense instruction in the non-capital context, as is required for habeas relief under § 2254(d)(1). *See Samu v. Elo*, 14 Fed. Appx. 477, 479 (6th Cir. 2001); *Kuroda v. Bell*, No. 2:07-CV-12310, 2007 WL 1657410, at *2 (E.D. Mich. June 7, 2007) (Cohn, J.); *Adams v. Smith*, 280 F. Supp. 2d 704, 717 (E.D. Mich. 2003) (Tarnow, J.).

Second, any error in failing to give a voluntary manslaughter instruction was harmless. The jury was instructed on the intermediate offense, second-degree murder, but nevertheless convicted petitioner of first-degree premeditated murder. Second-degree murder is a lesser

---

2

[2] Because it is clear that petitioner is not entitled to habeas relief on the merits of this claim, the Court need not resolve respondent's argument that this claim is procedurally defaulted.

offense than first-degree premeditated murder, but a more serious offense than voluntary manslaughter. As noted by one circuit court, the Supreme Court has recognized that "in cases involving offenses on a ladder, if the trial court wrongfully refuses to charge the offense at the bottom rung, that error is harmless provided the jury returns a verdict for an offense higher up rather than for an intermediate offense which is also charged." *Geschwendt v. Ryan*, 967 F.2d 877, 884 (3d Cir. 1992) (discussing *Schad v. Arizona*, 501 U.S. 624, 647-48 (1991)); *accord Six v. Delo*, 94 F.3d 469, 478 (8th Cir. 1996); *Allridge v. Scott*, 41 F.3d 213, 220 (5th Cir. 1994); *Slade v. Taylor*, 689 F. Supp. 595, 599 (E.D. Va. 1988). Because petitioner was convicted of a greater offense of first-degree premeditated murder over the intermediate offense of second-degree murder, petitioner was not prejudiced by the trial court's failure to instruct on voluntary manslaughter. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

*b.Failure to Instruct on Self-Defense*

Petitioner also argues that the trial court erred, thereby denying him a fair trial, when it refused to instruct the jury on self-defense. Once again, this claim does not present a cognizable basis for habeas review.

It is well established that the failure to give a self-defense instruction "does not deprive the defendant of his constitutional right to due process if the evidence produced during trial was insufficient to warrant such an instruction." *Allen v. Morris*, 845 F.2d 610, 617 (6th Cir. 1988). Under Michigan law, a defendant is entitled to an instruction on a defense theory of the case where the instruction is supported by the evidence presented at trial. *See People v. Mills*, 450 Mich. 61, 81, 537 N.W.2d 909, 919-20 (1995). The killing of another person in self-defense, or in the defense of others, is justifiable homicide if the defendant honestly and reasonably believes

that his life is in imminent danger or that there is a threat of serious bodily harm. *People v. Kurr*, 253 Mich. App. 317, 320-21, 654 N.W.2d 651 (2002). However, it is well established that "one who is an initial aggressor… is generally not entitled to use deadly force in self-defense." *People v. Riddle*, 467 Mich. 116, 120 n.8, 649 N.W.2d 30, 35 n.8 (2002). The defense is not available when the defendant is the initial aggressor, unless he withdraws from any further encounter with the victim and communicates such withdrawal to the victim. *People v. Kemp*, 202 Mich. App. 318, 323, 508 N.W.2d 184 (1993).

Here, there were two witnesses to the shooting incident that testified at trial, Darryl Satterwhite, who was with the victim, and Lester Adams, who was with petitioner. According to Mr. Adams, petitioner had recognized the two men on the street and asked Mr. Adams to turn his car around because he was about to "slap the shit out of this dude." Mr. Adams parked his car and petitioner got out and approached the victim. After words were exchanged, shots were fired. According to Satterwhite, petitioner approached himself and the victim on foot with another friend. The petitioner spoke some words to the victim and then he opened fire with a handgun. He also stated that, after the victim was shot, the victim pulled out his own gun and shot toward the petitioner. Petitioner shot two more times then took off running. Because the evidence at trial established that petitioner was the initial aggressor in the incident and that there was no evidence that the victim was indeed the first person to pull out or fire a gun, petitioner was not entitled to a self-defense instruction as a matter of state law. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

E.*Motion to Quash (Ground 2)*

In Ground 2, the petitioner challenges the district court's decision to bind him over for trial in the Wayne County Circuit Court because there was no evidence to support premeditation. The

Court should conclude that the petitioner is not entitled to habeas relief on this claim, for two reasons.

First, petitioner's bind-over claim is not cognizable on habeas review. There is no general constitutional right to a preliminary examination before trial. *See Gerstein v. Pugh*, 420 U.S. 103, 125 n.26 (1975); *Harris v. Neil*, 437 F.2d 63, 64 (6th Cir. 1971). Thus, a state court's failure to even hold a preliminary examination does not present a cognizable habeas claim. *See Scott v. Bock*, 241 F. Supp. 2d 780, 793 (E.D. Mich. 2003) (Lawson, J.). Similarly, therefore, a claim that the evidence offered at a preliminary examination was insufficient for a finding of probable cause is not cognizable on habeas review. *See David v. Lavinge*, 190 F. Supp. 2d 974, 978 (E.D. Mich. 2002) (O'Meara, J.).

Second, even if the petitioner's bind-over claim is cognizable, there was sufficient evidence of premeditation to support the bind-over. The prosecution's burden at the preliminary examination stage is not onerous. As the Michigan Court of Appeals has explained:

> A district court must bind over where the prosecutor has presented competent evidence sufficient to support probable cause to find both that a felony was committed and that defendant committed it. [*People v. Northey*, 231 Mich.App. 568], 574-575, 591 N.W.2d 227 [(1998)]. The prosecutor is not required to prove all elements of the offense charged at the preliminary hearing, but must only produce evidence sufficient for a finding of probable cause. "Probable cause to believe that the defendant committed the crime is established by a reasonable ground of suspicion, supported by circumstances sufficiently strong to warrant a cautious person in the belief that the accused is guilty of the offense charged." *People v. Woods*, 200 Mich. App. 283, 288, 504 N.W.2s 24 (1993). "Circumstantial evidence and reasonable inferences arising from the evidence may be sufficient to justify binding over a defendant." *Id.*

*People v. Cervi*, 270 Mich. App. 603, 616, 717 N.W.2d 356, 364 (Mich. Ct. App. 2006); *see also*, *People v. Grayer*, 235 Mich App. 737, 744 n.3, 599 N.W.2d 527, 531 n.3 (Mich. Ct. App. 1999). "Probable cause signifies evidence sufficient to cause a person of ordinary prudence and

caution to conscientiously entertain a reasonable belief of the accused's guilt." *People v. Justice*, 454 Mich. 334, 344, 562 N.W.2d 652, 657 (1997). With respect to first-degree premeditated murder, "the prosecution must prove that the defendant intentionally killed the victim and that the act of killing was premeditated and deliberate." *People v. Anderson*, 209 Mich. App. 527, 537, 531 N.W.2d 780, 786 (1995); *see also, Grant v. Rivers*, 920 F. Supp. 769, 786 (E.D. Mich. 1996); *People v. Younger*, 380 Mich. 678, 681, 158 N.W.2d 493, 495 (1968); *People v. Brown*, 137 Mich. App. 396, 407, 358 N.W.2d 592, 597 (1984). Both intent to kill and "premeditation and deliberation may be inferred from the circumstances surrounding the killing." *People v. Ortiz-Kehoe*, 237 Mich. App. 508, 520, 603 N.W.2d 809 (1999); *accord Warren v. Smith*, 161 F.3d 358, 361 (6th Cir. 1998); *People v. McRunels*, 237 Mich. App. 168, 181, 603 N.W.2s 95, 102 (1999); *Anderson*, 209 Mich. App. At 537, 531 N.W.2d at 786. Relevant factors include the relationship of the parties, the defendant's actions prior to the killing, the circumstances of the killing, and the defendant's conduct after the killing. *See id.; Brown*, 137 Mich. App. at 407, 358 N.W.2d at 597.

Here, there was sufficient evidence of premeditation to support the bind-over on first-degree murder. Here, the evidence at the preliminary examination indicated that the petitioner observed the victim on the street and expressed an intention to harm the victim. Petitioner got out of the car, confronted the victim on the street and after an argument, shot the victim. Petitioner ran back to the car and went home. This evidence is sufficient to establish probable cause to believe that the defendant acted with premeditation and deliberation to justify binding him over on first degree murder even if this claim were cognizable. Thus, petitioner is not entitled to habeas corpus relief.

F.*Ineffective Assistance of Counsel (Ground 3)*

1. *Clearly Established Law*

The Sixth Amendment right to counsel and the corollary right to effective assistance of counsel protect the fundamental right to a fair trial. *See Strickland v. Washington,* 466 U.S. 668, 687 (1984). To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense. *Id.* at 687. These two components are mixed questions of law and fact. *See id.* at 698. Further, "[t]here is no reason for a court deciding an ineffective assistance claim… to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697. If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, … that course should be followed." *Id.*

With respect to the performance prong of the inquiry, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *See id.* at 689; *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). "[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citations omitted). "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence, before the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable respecting guilt." *Id.* at 695.

2. *Analysis*

Petitioner argues that defense counsel was ineffective for failing to challenge his identification at a pretrial lineup. The Michigan Court of Appeals considered and denied this claim on the merits during direct appeal by applying the correct constitutional standard in a manner that was not objectively unreasonable. The court explained that although petitioner argued he was improperly identified by Adams at a pretrial lineup, there was no indication in the record that Adams had ever participated in a lineup. The court further explained that, assuming petitioner intended to refer to Satterwhite instead of Adams, the record failed to support petitioner's argument that there was an improper identification procedure involving Satterwhite. This determination was reasonable.

As the court of appeals explained, there was no testimony at trial, and nothing else in the record to suggest, that Adams participated in a line-up. And any improper identification procedure involving Adams would have been harmless in any event, as Adams was a friend of petitioner and was accompanying him at the time of the shooting. With respect to Satterwhite, petitioner points to nothing to suggest that the line-up was impermissibly suggestive. He claims only that his physical characteristics did not match the description given to the police by Satterwhite. While this fact may bear on the credibility of Satterwhite's identification—a matter for the jury to resolve—it does not show that the line-up procedure itself was impermissibly suggestive. Because petitioner has pointed to nothing to show a reasonably probability that a challenge to the identification procedure would have been successful, he cannot show that counsel was ineffective for failing to challenge the identification procedure. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

G. *Recommendation Regarding Certificate of Appealability*

1. *Legal Standard*

As amended by the Antiterrorism and Effective Death Penalty Act, section 2253 provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1). The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). As the Sixth Circuit has noted, this language represents a codification of the Supreme Court's decision in *Barefoot v. Estelle*, 463 U.S. 880 (1983), and "[t]he AEDPA thus makes no change to the general showing required to obtain a certificate[.]" *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1073 (6th Cir. 1997); *accord Slack v. McDaniel*, 529 U.S. 473, 483 (2000). Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue. Rather, the courts that have considered the issue have concluded that "'[a] substantial showing requires the applicant to "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further."'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996) (quoting *Barefoot*, 463 U.S. at 893 n.4)); *accord Slack*, 529 U.S. at 483-84. Although the substantive standard is the same, "[t]he new Act does, however, require that certificates of appealability, unlike the former certificates of probable cause, specify which issues are appealable." *Lyons*, 105 F.3d at 1073. (citing 28 U.S.C. § 2253(c)(3)). Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the

applicant." Rule 11(a), 28 U.S.C. foll. § 2254. The rule tracks § 2253(c)(3)'s requirement that any grant of a certificate of appealability "state the specific issue or issues that satisfy the showing required by § 2253(c)(2)," Rule 11(a), but omits the requirement contained in the pre-amendment version of Federal Rule of Appellate Procedure 22(b)(1) that the court explain "why a certificate should not issue." FED. R. APP. P. 22(b)(1) (version effective prior to 2009 amendment); *see id.*, advisory committee note, 2009 amendments. In light of the new Rule 11 requirement that the Court either grant or deny the certificate of appealability at the time of its final adverse order, I include a recommendation regarding the certificate of appealability issue here.

2.*Analysis*

If the Court accepts my recommendation on the merits, the Court should also deny petitioner a certificate of appealability, for the reasons explained above. The record establishes that the petitioner was not prejudiced by the trial court's failure to instruct on voluntary manslaughter, and because the evidence at trial established that petitioner was the initial aggressor in the incident and there was no evidence that the victim was the first person to pull out or fire a gun, petitioner was not entitled to a self-defense instruction. Accordingly, the resolution of petitioner's jury instruction claim is not reasonably debatable. Further, because the claim is not cognizable on habeas review and because, in any event, there was sufficient evidence of premeditation to support the bind over on first degree murder, the resolution of petitioner's second claim is not reasonably debatable. Finally, because petitioner has failed to show that the identification procedure prior to trial was suggestive, the resolution of petitioner's ineffective assistance claim is not reasonably debatable. Accordingly, the court should conclude that petitioner is not entitled to a certificate of appealability.

H. *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law. Accordingly, the Court should deny petitioner's application for the writ of habeas corpus. If the Court accepts this recommendation, Court should also conclude that petitioner is not entitled to a certificate of appealability.

III. NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record and by electronic means or U.S. Mail on January 4, 2012.

s/Eddrey Butts
Case Manager